**UNITED STATES of America, Appellee,**

**v.**

**Marco A. ECHEVERRI, Defendant, Appellant.**

**No. 92–1426.**

United States Court of Appeals, First Circuit.

Heard Dec. 11, 1992.

Decided Jan. 5, 1993.

Edward C. Roy, with whom Roy & Cook was on brief, for defendant, appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., was on brief, for the U.S.

Before SELYA, Circuit Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant Marco A. Echeverri asks us to overturn his conviction on two drug-trafficking charges. He alleges that the proof was insufficient to support the jury's verdict; that the government never properly authenticated a "drug ledger;" and that the court below erred in permitting an expert witness to testify concerning the import of the disputed document. Discerning no error, we affirm.

## I. BACKGROUND

We limn the facts in the light most favorable to the government, consistent with record support. *See, e.g., United States v. Maraj*, 947 F.2d 520, 522 (1st Cir.1991).

Armed with a search warrant, a team of law enforcement officers including FBI Special Agent Frederick Ghio entered appellant's apartment in Pawtucket, Rhode Island. The living quarters consisted of a narrow bedroom, a multi-purpose room, and a bathroom, having a total combined area roughly equal to that of a one-car garage. When the agents arrived, Victor Gallego was leaving the bathroom and appellant was seated at a table in the multi-purpose room. Next to appellant, on the couch and in plain view, lay an earnings statement in his name. On the back of this statement was a handwritten column of numbers arrayed in the following fashion:

```
      1000
      2000
     17000
      1000
     10000
      4000
      1000
      1000
      ―――――
     34000
```

In the course of the ensuing search the agents found a tape-wrapped block of cocaine—eighty-six percent pure and weighing about two pounds—on the toilet lid. The tape had broken and the contraband was exposed. An electronic scale lay nearby.

Gallego and Echeverri were charged with possession of cocaine with intent to distribute it, 21 U.S.C. §§ 841(a)(1); 841(b)(1)(B), and with participating in a drug distribution conspiracy. 21 U.S.C. § 846. Gallego pled guilty and Echeverri stood trial alone. Over his objection, the government introduced the earnings statement into evidence. The court allowed agent Ghio to testify that, in his opinion, the reverse side of the statement comprised a drug ledger (the individual figures corresponding to per-ounce prices for various cocaine sales in the Rhode Island market). Ghio further testified that it was common for cocaine dealers to keep their accounts in such fashion; that the going price for cocaine was $35,000 to $40,000 per kilogram; that the

total shown on the earnings statement, if interpreted to mean "dollars" and added correctly,[1] corresponded in rough proportion to the gross sales price of the aggregate cocaine on hand; and that the quantity of narcotics seized was inconsistent with personal use.

The jury convicted Echeverri on both counts. This appeal ensued.

## II. SUFFICIENCY OF THE EVIDENCE

Appellant labors to convince us that the judgment below rests on too fragile an evidentiary foundation. We are not persuaded.

### A. *Standard of Review.*

■■■ The standard of review applicable to sufficiency-of-the-evidence challenges is settled. An appellate court must examine the evidence in the light most flattering to the prosecution, indulging all reasonable inferences in its favor and then determining whether a rational jury could find guilt beyond a reasonable doubt. *See, e.g., Maraj*, 947 F.2d at 522–23; *United States v. Boylan*, 898 F.2d 230, 243 (1st Cir.), *cert. denied*, 498 U.S. 849, 111 S.Ct. 139, 112 L.Ed.2d 106 (1990). In making this determination, the court must credit both direct and circumstantial evidence—and it must do so without evaluating the relative weight of different pieces of proof or venturing credibility judgments. To uphold a conviction, the court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in "a plausible rendition of the record." *United States v. Ortiz*, 966 F.2d 707, 711 (1st Cir.1992), *petition for cert. filed* (U.S. October 19, 1992) (No. 92–6552).

### B. *Possession with Intent to Distribute.*

In challenging his conviction on the specific-offense count, appellant questions whether the evidence is copious enough to sustain a finding that he knowingly pos-

---

1. The column of figures, added correctly, totalled 37,000, not 34,000. We consider this mathematical mishap unimportant.

sessed cocaine. The government, he says, proved no more than his "mere presence" at a site where drugs were found.

■ The "mere presence" defense has become, at one and the same time, both the last haven of the innocent and the last refuge of the scoundrel. Although courts have found it applicable in certain situations, *United States v. Barnes*, 890 F.2d 545, 549 (1st Cir.1989) (collecting cases), *cert. denied*, 494 U.S. 1019, 110 S.Ct. 1326, 108 L.Ed.2d 501 (1990), the mere presence defense is not so ubiquitous as to envelop every drug-trafficking case in which the government lacks direct evidence of a defendant's complicity. The defendant's presence at a place where contraband is found may or may not be purely coincidental. The attendant circumstances tell the tale—and the culpability of a defendant's presence hinges upon whether the circumstances fairly imply participatory involvement. In other words, a defendant's "mere presence" argument will fail in situations where the "mere" is lacking.

■ This is such a situation. There is far more to the prosecution's case against Echeverri than his corporeal presence in the apartment. A rational jury, drawing reasonable inferences from proven facts, could certainly have concluded that this was a case of culpable presence as opposed to mere presence, *see Ortiz*, 966 F.2d at 712, and that appellant was in knowing possession of the contraband at the time of the raid. We explain briefly.

Both constructive possession and guilty knowledge may be inferred from a defendant's dominion and control over an area where narcotics are found. *See, e.g., Barnes*, 890 F.2d at 549. In this instance, there is considerable evidence of dominion and control. Appellant concedes that the apartment was his abode. His rent receipts, passport, and other personal effects were strewn about the premises. As the lessee of the apartment, and the one who called it home, appellant was hardly power-

less to determine who and what could come inside.[2]

Moreover, the entire apartment consisted of a small, cramped space. The cocaine was in plain view, resting openly on the dwelling's only toilet. Tools of the drug trade were conspicuously displayed. Echeverri himself was physically present, seated within four feet of the contraband. All in all, the totality of the circumstances suffices to support both a finding of constructive possession and a finding of guilty knowledge. *See, e.g., United States v. Gonzalez–Torres*, 980 F.2d 788, 789–91; *Ortiz*, 966 F.2d at 713–14; *United States v. Desmarais*, 938 F.2d 347, 352 (1st Cir. 1991); *United States v. Batista–Polanco*, 927 F.2d 14, 19 (1st Cir.1991); *Barnes*, 890 F.2d at 549–51; *see also United States v. Calle–Cardenas*, 837 F.2d 30, 32 (1st Cir.) (where apartment in which defendant was found contained his clothes and identification cards, he had dominion and control over apartment), *cert. denied*, 485 U.S. 1024, 108 S.Ct. 1582, 99 L.Ed.2d 897 (1988); *United States v. Lochan*, 674 F.2d 960, 965–66 (1st Cir.1982) (defendant had dominion and control over area behind back seat of automobile he was driving and, therefore, over hashish stowed in that area).

■ The evidence was also ample to sustain a finding of scienter. We have repeatedly held, and today reaffirm, that an intent to distribute drugs can legitimately be inferred from factors such as quantity and purity. *See, e.g., United States v. Ocampo–Guarin*, 968 F.2d 1406, 1410 (1st Cir.1992) (collecting cases); *Batista–Polanco*, 927 F.2d at 18–19. Such factors prevail here. Furthermore, agent Ghio's testimony adds strength to the relevant evidentiary predicate.

We will not paint the lily. Because we require only that a jury's verdict be supportable, not that it be inevitable, *see Boylan*, 898 F.2d at 243, we must affirm appellant's conviction for possession with intent to distribute.

---

**2.** The fact that appellant, as the sole rent payer and resident of the dwelling, had the exclusive right to control the comings and goings there is one of several important distinctions between this case and *United States v. Ocampo*, 964 F.2d 80 (1st Cir.1992), much bruited by appellant.

### C. *Conspiracy.*

Appellant's challenge to his conspiracy conviction fares no better. To support a conspiracy conviction, the prosecution must prove certain things not required under the specific-offense count. It must show, *inter alia*, that an agreement or working relationship existed, that it had an unlawful purpose, and that the defendant was a voluntary participant in it. *See United States v. David*, 940 F.2d 722, 735 (1st Cir.1991), *cert. denied*, —— U.S. ——, ——, ——, ——, 112 S.Ct. 605, 908, 1298, 2301, 116 L.Ed.2d 628, 809, 117 L.Ed.2d 520, 119 L.Ed.2d 224 (1992); *United States v. Rivera–Santiago*, 872 F.2d 1073, 1079 (1st Cir.), *cert. denied*, 492 U.S. 910, 109 S.Ct. 3227, 106 L.Ed.2d 576 (1989). The agreement itself "need not be express, but may consist of no more than a tacit understanding." *United States v. Glover*, 814 F.2d 15, 16 (1st Cir.1987) (citations and quotation marks omitted); *accord United States v. Paiva*, 892 F.2d 148, 161 (1st Cir.1989). Moreover, the proof of a defendant's conspiratorial involvement may consist of indirect evidence, including reasonable inferences drawn from attendant circumstances. *See, e.g., David*, 940 F.2d at 735; *Glover*, 814 F.2d at 16–17. In the last analysis, criminal juries are not expected to ignore what is perfectly obvious. *See United States v. Ingraham*, 832 F.2d 229, 240 (1st Cir.1987), *cert. denied*, 486 U.S. 1009, 108 S.Ct. 1738, 100 L.Ed.2d 202 (1988).

In this case, there was evidence that, in a tiny apartment, within feet of the sole tenant, law officers found a commercially exploitable quantity of high-purity cocaine, a measuring scale of the sort frequently used by narcotics dealers to ply their trade, and a drug ledger (written on the back of the tenant's pay stub). Exiting from the room where the cocaine lay open and exposed was another man (Victor Gallego). A jury viewing this evidence could reasonably conclude that the two men had agreed to disobey the law and distribute cocaine. *Cf., e.g., Ortiz*, 966 F.2d at 712 (criminals "rarely seek to perpetrate felonies before larger-than-necessary audiences"); *Batista–Polanco*, 927 F.2d at 18–19 (similar); *United States v. Cuevas–Esquivel*, 905 F.2d 510, 515 (1st Cir.) (similar), *cert. denied*, 498 U.S. 877, 111 S.Ct. 208, 112 L.Ed.2d 169 (1990).

## III. OTHER ASSIGNMENTS OF ERROR

We consider appellant's assignments of mid-trial error in the ensemble.

### A. *Authentication.*

Appellant complains that the government failed to authenticate the so-called drug ledger as required by Fed.R.Evid. 901, and that, consequently, the district court erred in admitting it into evidence.[3] We review the trial court's rulings concerning authentication of documents only for mistake of law or abuse of discretion. *See Ortiz*, 966 F.2d at 716; *United States v. Ladd*, 885 F.2d 954, 956 (1st Cir.1989).

When the authenticity of a document is challenged, the court must determine whether there is sufficient threshold proof that the document is what its proponent claims it to be. *See Ortiz*, 966 F.2d at 716. The Federal Rules of Evidence adopt a flexible approach to this question. Indeed, the applicable rule suggests that the "[a]ppearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances," can confirm a document's authenticity. Fed.R.Evid. 901(b)(4).

In this instance, the government claimed that the earnings statement doubled as a drug ledger. The district court admitted the evidence on that basis. We discern no error. The earnings statement was clearly identified with Echeverri—it was, after all, a recapitulation of his wages, reposing in his apartment. Federal

---

**3.** The rule provides in pertinent part:

The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

Fed.R.Evid. 901(a).

agents discovered the document lying on a couch within feet of a sizable, easily visible package of cocaine. The column of handwritten figures on the paper totalled 37,-000—the approximate dollar value of the discovered cocaine in the local market. Finally, an agent familiar with the drug trade testified on voir dire that he believed the document was a drug ledger and gave persuasive reasons in support of that conclusion. No more was exigible.

To be sure, the government presented no direct proof that Echeverri authored the jottings on the earnings statement. But, such proof was not a prerequisite to admissibility in the circumstances at bar. On the record before us, the government sufficiently connected the document to the conspiracy and to the appellant, even though it did not conclusively prove the author's identity. *Cf., e.g., United States v. Natale*, 526 F.2d 1160, 1173 (2d Cir.1975) (holding that, for authentication, "[p]roof of the connection of an exhibit to the defendants may be made by circumstantial, as well as direct, evidence"), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). Whether Echeverri, his coconspirator, or some third person was the one who actually put pen to paper and wrote down the figures is of no moment. Regardless, the evidence that identified the document as a drug ledger was the key to the issue of authentication. *See United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir.1990), *cert. denied*, —— U.S. ——, ——, 112 S.Ct. 151, 253, 116 L.Ed.2d 117, 207 (1991); *United States v. Drougas*, 748 F.2d 8, 26 (1st Cir.1984).[4]

## B. *Expert Testimony.*

Appellant also contends that the district court erred in allowing agent Ghio to offer opinion evidence anent the drug ledger. His contention is unavailing.

We have consistently recognized that academic training is not a sine qua non of expert knowledge concerning the practices of hard-core drug traffickers. *See, e.g., United States v. Hoffman*, 832 F.2d 1299, 1310 (1st Cir.1987). Perhaps realizing the durability of this tenet, appellant does not question Ghio's qualifications to serve as an expert witness. He does, however, question the need for expert testimony.

In deciding whether to admit or exclude opinion evidence, courts must assess whether the testimony will likely assist the jury in understanding the proof or ascertaining the facts. *See* Fed.R.Evid. 702. Because of its first-hand acquaintance with the case, the trial court enjoys broad leeway in making this discretionary determination. The court of appeals will overturn a trial-level determination about the need for expert testimony only if a manifest abuse of the trial court's discretion is in prospect. *See Ladd*, 885 F.2d at 959; *Hoffman*, 832 F.2d at 1310.

Here, the central issue on count 2 was whether appellant was—or was not—a knowing and intentional participant in a cocaine conspiracy. Ghio's testimony was clearly relevant to that issue. Moreover, the testimony was undoubtedly helpful to the jury. Laymen, on average, are not familiar with the praxis of the cocaine community. *See Ladd*, 885 F.2d at 960. It follows that a trial court may allow a qualified expert to identify an otherwise inscrutable document as a drug ledger and explain its contents. *See, e.g., United States*

---

**4.** The cases cited by appellant in support of his challenge are readily distinguishable. In both *United States v. Mouzin*, 785 F.2d 682 (9th Cir.), *cert. denied*, 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986) and *United States v. Ordonez*, 737 F.2d 793 (9th Cir.1983), the government argued that intricately detailed writings were properly admitted into evidence to prove the truth of the matter asserted therein because the writings were coconspirators' statements or statements of a party opponent. In this context, the Ninth Circuit found error because there was no evidence of actual authorship and, therefore, no foundation for the admission of such statements. *See Mouzin*, 785 F.2d at 692; *Ordonez*, 737 F.2d at 800–02; *see also* Fed.R.Evid. 801(d)(2). In contrast, there has been no suggestion in the instant case that the document was admitted to prove the truth of the matter asserted therein. Rather, the jottings on this sheet are more akin to physical evidence of the crime than to potential hearsay statements. *See, e.g., United States v. Wilson*, 532 F.2d 641, 645–46 (8th Cir.), *cert. denied*, 429 U.S. 846, 97 S.Ct. 128, 50 L.Ed.2d 117 (1976).

*v. Campino,* 890 F.2d 588, 593 (2d Cir. 1989), *cert. denied,* 494 U.S. 1068, 110 S.Ct. 1787, 108 L.Ed.2d 788 (1990); *United States v. Diaz,* 878 F.2d 608, 619 (2d Cir), *cert. denied,* 493 U.S. 993, 110 S.Ct. 543, 107 L.Ed.2d 540 (1989); *United States v. DeSoto,* 885 F.2d 354, 362 (7th Cir.1989); *see also United States v. Rubio–Estrada,* 857 F.2d 845 (1st Cir.1988) (noting approvingly, albeit without considering the issue raised by this appellant, that the jury had before it the expert testimony of a government witness who identified and explained a drug ledger). The lower court acted well within the encincture of its discretion in permitting the use of such evidence here.[5]

## IV. CONCLUSION

We need go no further. The government proved Echeverri's guilt beyond a reasonable doubt in a trial free from reversible error. The judgment below is therefore

*Affirmed.*

5. We note that the district court wisely instructed the jurors that agent Ghio's opinion testimony, like opinion testimony generally, was not binding upon them.