USCA1 Opinion

 

 April 19, 1995 [NOT FOR PUBLICATION] United States Court of Appeals For the First Circuit ____________________ No. 94-1770 UNITED STATES OF AMERICA, Appellee, v. FRANCISCO CABRERA-GARCIA AND ALEJANDRO CABRERA-GARCIA, Defendants, Appellants. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Juan M. Perez-Gimenez, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Coffin, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge.  _____________ ____________________ Peter Goldberger with whom Pamela A. Wilk and Alan Ellis were on ________________ _______________ __________ brief for appellants. Philip Urofsky with whom Jo Ann Harris, Assistant Attorney _______________ _______________ General, and Theresa M.B. Van Vliet, Chief, Narcotic & Dangerous Drug ______________________ Section, were on brief for appellee. ____________________ ____________________ COFFIN, Senior Circuit Judge. Francisco and Alejandro ______________________ Cabrera-Garcia were convicted on drug trafficking charges in connection with an extensive cocaine distribution scheme. They raise various trial and sentencing errors, none of which we find meritorious. I. Background __________ We shall begin with a brief recounting of the facts, as the jury could have found them, adding more detail in later sections as necessary to explain our conclusions. On the evening of August 16, 1993, several members of a major cocaine importation and distribution organization led by "Papo" Rivero met at Rivero's apartment to discuss a delivery of about 100 kilograms of cocaine that was scheduled for the next morning. One of those present was Roberto Sierra Rivera (Sierra), a government informant. Later that evening, Sierra reported to the FBI details of the planned delivery: a Buick LeSabre had been given earlier to two Dominicans, who would return it the next morning loaded with the cocaine; the car was to be left in the parking lot of a shopping center known as the Plaza Carolina. One of the others in Rivero's apartment that night, Ricardo Vazquez Gonzalez, testified that he and a Colombian drug supplier named Oscar had transferred the LeSabre and its keys to appellant Alejandro Cabrera-Garcia, who is Dominican, on the afternoon of the 16th at the Plaza Carolina shopping mall. Cabrera-Garcia was with a family, including children, in a red Ford.1 The next morning, August 17th, Sierra and two FBI agents were at the Plaza Carolina mall and saw appellant Francisco Cabrera-Garcia park the blue LeSabre in the location described by Sierra to the FBI the night before. Francisco then went into the shopping center. About 25 minutes later, Alejandro drove up in a red Ford Tempo and parked two spaces from the LeSabre. Francisco, whom no one had seen leave the mall, was in the passenger seat. The brothers got out of the car and went into the mall. Vazquez arrived a short time later and was stopped by the FBI agents when he attempted to leave with the LeSabre. A search of the car, conducted with Vazquez's consent, revealed 94 brick-shaped parcels containing 96 kilograms of cocaine.  ____________________ 1 Defendants highlight the inconsistency between Vazquez's testimony that he and Oscar delivered the LeSabre to Alejandro in Carolina and Sierra's report to the FBI, as described by Agent ______________________ Fraticelli at a suppression hearing, that the car had been _______________________________________ delivered to two Dominicans in Rio Grande. Defendants urge us to reject Vazquez's testimony as self-serving -- designed to gain favor with the FBI -- and to credit only Sierra's statement, which did not directly implicate the Cabreras. For two reasons, however, the difference in testimony gives us no pause. First, Sierra's information was second-hand, received from others during the meeting at Rivero's apartment, and may have rested upon an incorrect assumption about which Dominican group was involved. Second, the reference to Rio Grande occurred solely at the suppression hearing. At trial, Sierra testified only that the car had been delivered to "two [D]ominicans." Had they viewed the discrepancy in his testimony as significant, defendants could have questioned Sierra at trial about where the delivery occurred and the basis for his knowledge. They did not do so, and may not on appeal remedy their failure. -3- Vazquez was arrested, and several agents then entered the mall in search of Alejandro and Francisco Cabrera, who were found in a clothing store. Both were arrested. During processing, a cellular phone seized from Alejandro's car rang. FBI Agent Rivera answered the phone, and the person on the other end asked for Alejandro. After Rivera identified himself as Francisco, the caller asked, "How come Alejandro is tak[ing] so long in Carolina," and then the phone went dead. A few minutes later, the phone rang a second time, the same person again requested Alejandro, and he then asked whether everything was going okay. Sierra testified at trial that Oscar, the Colombian supplier, told him later that evening that he had spoken to an "animal," a slang term for an FBI agent, when he called to "make sure if [] everything was good or bad" with the cocaine delivery. The grand jury subsequently returned an eight-count indictment against the Cabreras and fourteen others, including Rivero, Vazquez and Oscar. The Cabreras were named in two counts: Count 1, charging a conspiracy to possess with intent to distribute more than 1,000 kilograms of cocaine, and Count 4, charging possession with intent to distribute the 96 kilograms of cocaine seized from the LeSabre. All co-defendants, except the Cabreras and Oscar, who was not apprehended, eventually pled guilty. The jury found both Cabreras guilty on the conspiracy count, but found only Francisco guilty on the possession count. II. Discussion __________ -4- Both defendants claim that the evidence was insufficient to support their convictions and that the prosecutor committed reversible error in his closing argument by, inter alia, _____ ____ referring repeatedly to facts not in evidence. Alejandro separately raises one additional substantive claim. He asserts that the district court wrongly concluded that his arrest was supported by probable cause and, therefore, improperly denied his motion to suppress papers seized from him at the time of that arrest. Both defendants also contend that the district court erred in sentencing them as minor, rather than minimal, participants in the charged conspiracy. We address each of these issues in turn. A. Sufficiency of the evidence. The well-established ______________________________ standard for evaluating sufficiency claims requires an appellate court to review the evidence as a whole, including all reasonable inferences from that evidence, in the light most favorable to the government. United States v. Echeverri, 982 F.2d 675, 677 (1st _____________ _________ Cir. 1993). If in doing so, the court finds that a rational trier of fact could find guilt beyond a reasonable doubt, it must affirm. Id. In making this determination, the court must credit ___ both direct and circumstantial evidence, without assigning it relative weights, and must resolve all credibility questions in favor of the verdict. Id. Applying this standard, we find the ___ evidence sufficient on each of the three counts of conviction. Conspiracy. Through the testimony of Sierra and Vazquez, __________ the government adduced sufficient evidence for a jury to find -5- well beyond a reasonable doubt that the delivery of cocaine at the Plaza Carolina mall was orchestrated by Papo Rivero as part of the substantial drug trafficking scheme charged in the indictment. To find the Cabreras guilty of participating in that conspiracy, the jury need not have found that they knew all of the details or members of the enterprise, or took part in all of its objectives. See United States v. Brandon, 17 F.3d 409, 428 ___ ______________ _______ (1st Cir. 1994). Rather, because the planned transfer of cocaine at the shopping mall plainly was part of a larger enterprise, the Cabreras' conspiracy convictions are unassailable if the jury could have found beyond a reasonable doubt that they were knowing and voluntary participants in the illicit events of August 16th and 17th. See Echeverri, 982 F.2d at 679. ___ _________ The jury could have found the following facts with respect to Alejandro's involvement. He received from Vazquez and Oscar the car in which the cocaine was found, and he reappeared with his brother the next morning at the specified delivery site. A notebook seized from him at the time of his arrest contained a mathematical calculation that the jury reasonably could have believed represented the value of the cocaine found in the car; the page showed 94, which was the number of packages, multiplied by 12, which in thousands was the average street value of a kilo of cocaine (i.e., $12,000).2 In addition, the two calls to Alejandro's cellular phone, in which the caller specifically  ____________________ 2 Although the notebook page contained other calculations, and 94 times 12 was multiplied incorrectly, the salient point is that the page did show an attempt to multiply those two numbers. -6- asked for Alejandro and asked about how things were going, confirmed the link between Alejandro and the drug enterprise. This is a far cry from "mere presence," cf. United States v. ___ ______________ Mehtala, 578 F.2d 6, 9-10 (1st Cir. 1978), and is enough to _______ support Alejandro's conspiracy conviction. The evidence against Francisco was equally suggestive of guilt. Of greatest significance is that he brought the car, which witnesses described as obviously heavily loaded, to the designated delivery site. Although he argues in his brief that there was no evidence that he knew the car contained illegal drugs, the jury reasonably could infer in the context of this carefully monitored drug trafficking enterprise that $1 million worth of cocaine would not have been left in the hands of an unknowing person. In addition, the complementary involvement of the two brothers3 -- one receiving the car, the other returning it -- and their later joint appearance at the parking lot permits an inference that both were privy to the same information about the project at hand. Alejandro's notebook calculation therefore is probative of Francisco's guilt as well. Indeed, Alejandro's use of the number 94 in his calculation, reflecting the number of bricks in the car rather than the actual number of kilos (96) contained in the bricks, suggests a visual inspection of the  ____________________ 3 Defendants argue that the prosecutor impermissibly urged the jury to consider the fact that the Cabreras were brothers when no evidence of their relationship was offered. Twice, however, testimony referring to the pair as brothers was introduced without objection. See Tr. at 174, 189.  ___ -7- trunk. It could reasonably be assumed that, as the driver of the loaded car, Francisco was present for that viewing. Finally, even if much of this evidence is equally consistent with Alejandro's having involved his brother unwittingly in the scheme, the jury could have found telling the evidence of substantial expenditures by Francisco in the weeks immediately preceding his arrest, despite his unemployment. We previously have recognized the relevance of unexplained sums of money in evaluating a defendant's involvement in narcotics trafficking. See United States v. Ford, 22 F.3d 374, 383 (1st Cir. 1994). The ___ _____________ ____ combined effect of all of this evidence is adequate to support Francisco's conviction on the conspiracy count. Possession. Francisco's sufficiency argument respecting the __________ possession count is answered essentially by the same evidence that undermines his claim on the conspiracy count. It is again of great significance that he, alone, brought the car loaded with cocaine to the designated pick-up spot at the shopping mall. Although there is no direct evidence that he looked in the trunk or knew its contents, the relationship with his brother, the unexplained spending in the weeks preceding this delivery, and the commonsense inference that the leaders of a sophisticated drug operation would not entrust a valuable load to a bystander all support the jury's finding. Whether other conclusions also could be drawn from these facts is not our inquiry; "we require only that a jury's verdict be supportable, not that it be inevitable," Echeverri, 982 F.2d at 678. _________ -8- B. Probable Cause. Alejandro argues that the district ______________ court erred in finding that, at the time he was arrested, the FBI agents had probable cause to believe that he was involved in the cocaine delivery. He asserts that the court therefore improperly denied his motion to suppress the notebook containing the calculation that appeared to represent the value of the cocaine. The district court held an evidentiary hearing and concluded that the totality of the circumstances supported the agents' action. We affirm the district court's decision on this point. Establishing probable cause requires only "`a reasonable ground for belief of guilt,'" not "`evidence which would justify condemnation or conviction,'" United States v. Diallo, 29 F.3d ______________ ______ 23, 25 (1st Cir. 1994) (quoting Brinegar v. United States, 338 ________ _____________ U.S. 160, 175 (1949)). That confined standard was met here. The agents conducting the surveillance at Plaza Carolina on the morning of August 17th had been given precise details about the planned delivery of a large quantity of cocaine from a reliable informant. The minutiae of the informant's report quickly were confirmed as a blue LeSabre with the forecasted license plate number arrived at the lot and was parked in the predicted location. The car reportedly had been given the day before to two Dominicans, and it was driven to the shopping center by an individual, Francisco, who appeared to meet that ethnic description. A short time later, a second apparently Dominican man, Alejandro, arrived at the parking lot with Francisco and parked near the LeSabre. Vazquez also appeared and -9- attempted to pick up the car, as the informant had reported would happen. Finally, the car did, in fact, contain a large load of cocaine. Confronted with the actual unfolding of events as they had been told to expect them, the agents reasonably could have suspected that the Cabreras were the two Dominicans to whom the ___ LeSabre had been entrusted the night before.4 In addition, the agents knew from Sierra that some factions of the Rivero organization monitored others' actions. It therefore was plausible for the agents to believe that the two men returned to the parking lot and parked virtually beside the LeSabre -- which visibly contained a heavy load -- as part of that oversight.5 In sum, we believe that "the cumulative effect of the facts in the totality of circumstances," United States v. Wiseman, 814 _____________ _______ F.2d 826, 828 (1st Cir. 1987) (quoting United States v. ______________ Baldacchino, 762 F.2d 170, 175 (1st Cir. 1985)), warranted a ___________ reasonable suspicion on the part of the FBI agents at Plaza Carolina that Alejandro was a participant in the Rivero conspiracy. We therefore affirm the district court's denial of his motion to suppress.  ____________________ 4 According to Vazquez, of course, only Alejandro picked up the car the night before. The officers, however, knew neither that he was the one who received the vehicle nor that the pickup was accomplished by only one Dominican. 5 To be sure, if their responsibility was to observe the next stage of the delivery, the Cabreras were less than conscientious, since they went into the mall to shop after parking their car. The agents, however, reasonably could have believed that the two men were simply remaining in the vicinity until the car had been picked up. -10- C. Closing Argument. Defendants identify five allegedly ________________ improper statements in the prosecutor's closing and rebuttal arguments that either relied improperly on facts not in evidence or unfairly disparaged defense counsel. We have considered each of the assertedly offending utterances and are satisfied that none requires reversal of the convictions. See United States v. ___ _____________ Ovalle-Marquez, 36 F.3d 212, 220 (1st Cir. 1994) ("To warrant ______________ reversal of a conviction on the grounds of a prosecutor's improper jury argument, a court must find that the prosecutor's remarks were both inappropriate and harmful."). Indeed, three of them drew no objection at trial, and can support reversal only if "a `miscarriage of justice would otherwise result,'" United ______ States v. Neal, 36 F.3d 1190, 1208 (1st Cir. 1994) (quoting ______ ____ United States v. Morales-Cartagena, 987 F.2d 849, 854 (1st Cir. _____________ _________________ 1993)). Only one statement warrants specific attention. The prosecutor in rebuttal accused defense counsel of attempting to confuse the jury by shifting the focus of the case to the FBI's conduct. [T]his is a technique [] that the defense always uses to try to confuse you as you make your decision[.] [Y]ou see they want to shift the blame, the blame is on this table[;] they want to move it towards this table, so that now you think that we are the bad guys, and that's why I get a second chance[,] ladies and gentlemen, that's why I get a second chance so I can help you see through th[ese] defense techniques that they try to confuse you with . . . . We previously have noted a prosecutor's obligation to focus on "the merits of the defendants' arguments rather than their -11- source," United States v. Whiting, 28 F.3d 1296, 1302 (1st Cir. _____________ _______ 1994), and again wish to emphasize that comments attributing deceptive motives to defense counsel are inappropriate and unnecessary. In our view, however, they would not have had a significant impact on the jury in this case, and therefore do not amount to plain error. See id. at 1302-03; United States v. ___ ___ _____________ Linn, 31 F.3d 987, 993 (10th Cir. 1994). ____ D. Sentencing. The defendants argue that the district court __________ should have granted four-level reductions in their offense levels in recognition of their "minimal" roles in the conspiracy, rather than adopt the two-level reductions for "minor" participation recommended in their pre-sentence reports. The court rested its determination primarily on the amount and purity of the drugs, and the likelihood that that quantity of cocaine would not have been entrusted by the Rivero organization to someone who was otherwise unaffiliated with the conspiracy. As defendants recognize, the line between minor and minimal participation is thin, see United States v. Vega-Encarnacion, 914 ___ _____________ ________________ F.2d 20, 25 (1st Cir. 1990), and the district court's factfinding on sentencing is reviewed only for clear error, see United States ___ _____________ v. DeMasi, 40 F.3d 1306, 1322 (1st Cir. 1994). In light of that ______ deferential standard, we find no basis upon which to disturb the court's judgment. Accordingly, the judgments of conviction and the sentences ____________________________________________________________ imposed are affirmed. ____________________ -12-