USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 94-1370 UNITED STATES, Appellee, v. FRANK NIEVES-BURGOS, Defendant - Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF PUERTO RICO [Hon. Raymond L. Acosta, Senior U.S. District Judge] __________________________ ____________________ Before Torruella, Chief Judge, ___________ Boudin, Circuit Judge, _____________ and Boyle,* Senior District Judge. _____________________ _____________________ Juan R. Acevedo-Cruz, by Appointment of the Court, for ______________________ appellant. John F. DePue, Attorney, Department of Justice, with whom ______________ Guillermo Gil, United States Attorney, Warren V zquez, Assistant _____________ _______________ United States Attorney, and Nina Goodman, Attorney, Department of ____________ Justice, were on brief for appellee. ____________________ August 14, 1995 ____________________  ____________________ * Of the District of Rhode Island, sitting by designation.  BOYLE, Senior District Judge. This case presents two BOYLE, Senior District Judge. ______________________ issues concerning the conviction of the appellant, Frank Nieves- Burgos, for use of a firearm during a drug-trafficking offense in violation of 18 U.S.C. 924(c)(1). Nieves-Burgos asserts, first, that the jury's general verdict of guilty on the firearm charge is ambiguous and must be set aside, as it was returned on a single charge containing three alleged violations, two of which were not supported by the evidence at trial. Second, Nieves- Burgos asserts that the only alleged violation supported by evidence at trial was itself not supported by sufficient evidence. We conclude that the jury verdict is not ambiguous and is adequately supported by the evidence, and we affirm. I. BACKGROUND I. BACKGROUND The factual background of this appeal is set forth in United States v. Torres-Maldonado, 14 F.3d 95, 98-100 (1st Cir.), _____________ ________________ cert. denied, 115 S. Ct. 193 (1994), an appeal taken by Nieves- ____ ______ Burgos' co-defendants. We therefore recount the relevant facts, which for the most part are not disputed, only briefly, and, as is appropriate, we do so in the light most favorable to the verdict. See United States v. Torres-Maldonado, 14 F.3d 95, 98 _____________ ________________ (1st Cir.), cert. denied, 115 S. Ct. 193 (1994). ____ ______ In February 1991, Nieves-Burgos and several others rented rooms 310, 311, and 327 of the Carib Inn Hotel in Isla Verde, Puerto Rico. Nieves-Burgos rented room 311 using a false name. The group occupied the rooms for several weeks. On March 6, 1991, hotel security personnel notified police of suspicious -2- conduct in the three rooms. There had been frequent traffic to, from, and between the rooms; the three rooms received 90% of the hotel's incoming telephone calls; the rooms often were paid for together, in cash; and, a hotel floor supervisor observed two handguns on a bureau in room 327. Agents of the United States Bureau of Alcohol, Tobacco, and Firearms (ATF) began surveillance of the hotel on March 6. At approximately 11:00 p.m. that evening, they observed Nieves- Burgos, H ctor Santiago-Alicea, Teddy Le n-Ayala, Oscar D az- Cruz, and an unidentified man in the hotel lobby. The agents observed Santiago-Alicea wearing a bullet-proof jacket, which was bulging from something concealed underneath. The group proceeded outside the hotel to a parking lot, where the unidentified man produced a bag and handed it to Santiago-Alicea. Later that same evening, another unidentified man arrived at the hotel, and was met by Nieves-Burgos and Pedro Luis Ram rez-Rivera (Ram rez-Rivera). After a brief conversation, Nieves-Burgos and Ram rez-Rivera left the unidentified man. They returned a short while later with Santiago-Alicea, who exchanged packages with the unidentified man. On March 7, 1991, ATF agents executed a search warrant at the three hotel rooms. In room 311, they found five persons: Nieves-Burgos, Marilyn Gotay-Col n, Catalino Torres-Maldonado, Ram rez-Rivera, and Santiago-Alicea. Nieves-Burgos was on one of the room's two beds, clad in his underwear. A search of the room revealed quantities of cocaine, several bundles of cash, various -3- instruments and supplies typically used for packaging cocaine, a bullet-proof jacket, and a loaded Beretta semi-automatic handgun. The gun was found with a bundle of cash in a zippered bag on a sofa on which Gotay-Col n was seated. The bag was located less than two feet from Nieves-Burgos. Rooms 310 and 327 were also searched, as were two cars that were in the hotel's parking lot. More cocaine and paraphernalia were found in the two rooms. Guns were found in the two cars. In a green Ford LTD, agents found a loaded .357 revolver; also found were a picture of Nieves-Burgos and a parking ticket on which was Nieves-Burgos' fingerprint. In a grey Buick, a nine-millimeter pistol was found. The Buick's registration certificate was found in Santiago-Alicea's wallet. Nieves-Burgos and others were indicted. In counts one and two of the indictment, Nieves-Burgos and others were charged with possessing with the intent to distribute, and conspiring to possess with the intent to distribute, cocaine. Count four1  ____________________ 1 Count four provides in full: On or about March 7, 1991, in the District of Puerto Rico and within the jurisdiction of this Court, FRANKIE FRANKIE NIEVES-BURGOS, also known as KENNY NIEVES-BURGOS, also known as KENNY RAMIREZ, also known as JOSE HERRERA- RAMIREZ, also known as JOSE HERRERA- RIVERA, PEDRO LUIS RAMIREZ-RIVERA, also RIVERA, PEDRO LUIS RAMIREZ-RIVERA, also known as PEDRO MEDINA-RIVERA, CATALINO known as PEDRO MEDINA-RIVERA, CATALINO TORRES-MALDONADO, MARILYN GOTAY-COLON, TORRES-MALDONADO, MARILYN GOTAY-COLON, HECTOR SANTIAGO-ALICEA, TEDDY LEON-AYALA, HECTOR SANTIAGO-ALICEA, TEDDY LEON-AYALA, and OSCAR DIAZ-CRUZ, also known as OSCAR and OSCAR DIAZ-CRUZ, also known as OSCAR SANTIAGO, the defendants herein, aiding SANTIAGO and abetting each other, did knowingly and unlawfully use three (3) firearms of the following descriptions: -4- charged Nieves-Burgos and five others with the knowing unlawful use of three firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. 924(c)(1).2 The  ____________________ (a) Beretta semi-automatic pistol caliber 9mm., Model 92-F, black in color, serial number BER042822Z loaded with ammunition of its own [sic]; (b) Smith and Wesson Revolver, caliber .357 magnum; Model 27-2, three and one half (3 1/2) inch barrel, nickel plated in color with brown grip, serial number N109155; loaded with ammunition of its own caliber; (c) Norinco semi-automatic pistol, caliber 9mm., Model L213, black in color, serial number 315202, loaded with ammunition of its own caliber; during and in relation to the commission of an offense punishable under the Drug Abuse Prevention and Control Act, that is, a violation of Title 21, United States Code, Section 841(a)(1), involving the Schedule II Narcotic Drug Controlled Substance cocaine, as defined in Title 18, United States Code, Section 924(c)(1), which may be prosecuted in a Court of the United States, to wit: aiding and abetting each other in the possession with intent to distribute of approximately nine hundred fifty-six point one (956.1) grams (gross weight) of cocaine, a Schedule II Narcotic Drug Controlled Substance; all in violation of Title 18, United States Code, Section 924(c)(1). 2 18 U.S.C. 924(c)(1) provides in part: Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of -5- firearms alleged in count four to have been used in violation of 924(c)(1) are the three handguns found in room 311 of the hotel and the two cars searched in the hotel parking lot. Evidence of the three firearms was presented at trial. At the close of the evidence, the trial judge instructed the jury without objection and presented them with a copy of the indictment for their deliberation. As to Nieves-Burgos, the jury returned general verdicts of guilty on counts one, two, and four. Nieves-Burgos took no appeal from the guilty verdict or his sentence. Upon his imprisonment, he filed a motion to vacate his sentence under 28 U.S.C. 2255, claiming ineffective assistance of counsel. His motion was granted, and he was afforded new counsel for resentencing. On count four, he was sentenced to sixty months' imprisonment, to run consecutive to his sentences on the other two counts. Nieves-Burgos now appeals the guilty verdict on count four. He asserts that the evidence was not sufficient to support his conviction as to any of the three firearms. The United States argues in response that the evidence of the firearm found in room 311 was sufficient to support the conviction. The government expressly declines to argue that evidence concerning either of the two firearms found in the automobiles was  ____________________ sufficient to support the conviction.3 During argument, the violence or drug trafficking crime, be sentenced to imprisonment for five years . . . . 3 In its brief, the government states: "The government does not argue that Nieves-Burgos' conviction under Section 924(c)(1) is supported by [evidence of] the two guns found during the searches of the cars." Government's Brief at 7 n.5. -6- parties were asked to submit supplemental briefs concerning the issue whether the general verdict of guilty should stand where it was returned on a count containing three alleged violations of the firearms statute, two of which concededly were unsupported by evidence at trial. The parties' arguments were received and considered. We address the issues. II. ANALYSIS II. ANALYSIS A. The General Verdict A. The General Verdict ___________________ Nieves-Burgos initially argues that his conviction for violation of 18 U.S.C. 924(c)(1) cannot stand as the jury's general verdict of guilty was ambiguous in that it was returned on a charge that alleged the use of three firearms in violation of 18 U.S.C. 924(c)(1), and the evidence at trial was not sufficient to support a conviction as to two of the firearms. The government concedes that the evidence at trial did not support a conviction as to two of the three firearms listed in count four, but argues that the verdict should stand as it is supported by sufficient evidence as to the remaining firearm. This issue was effectively determined in Griffin v. _______ United States, 502 U.S. 46 (1991). In Griffin, the appellant had _____________ _______ been convicted by jury of an unlawful conspiracy in violation of 18 U.S.C. 371. See Griffin v. United States, 502 U.S. 46, 47 ___ _______ _____________ (1991). A single count in the indictment charged that the conspiracy had two unlawful objects: impeding efforts of the Internal Revenue Service to ascertain income taxes; and impeding efforts of the Drug Enforcement Administration to ascertain -7- forfeitable income. See id. The evidence presented at trial ___ __ failed to establish the appellant's guilt with respect to the second object. See id. at 47-48. The trial court's instructions ___ __ to the jury permitted them to return a guilty verdict if they found the appellant to have participated in either of the two objects of the conspiracy. See id. at 48. The jury returned a ___ __ general verdict of guilty. See id. The Court affirmed the ___ __ verdict, citing the rule that when a jury returns a general verdict of guilty on a single count charging more than one criminal act, the verdict stands if the evidence sufficiently supports any of the acts charged. See id. at 56-57 (citing ___ __ Turner v. United States, 396 U.S. 398, 420 (1970)).  ______ _____________ Griffin provides what was a much-needed clarification _______ of the law. Prior to Griffin, Supreme Court authority appeared _______ somewhat disjointed, if not downright contradictory. Compare _______ Turner v. United States, 396 U.S. at 420 ("The general rule is ______ ______________ that when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged.") with Yates v. United States, 354 U.S. 298, 312 ____ _____ ______________ (1957)("[W]e think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected."). In Griffin, the Court articulated subtle distinctions between the _______ lines of relevant cases, seeking to reconcile them. See Griffin ___ _______ -8- v. United States, 502 U.S. at 52-56. It is appropriate briefly _____________ to discuss the Supreme Court's analysis in Griffin before we _______ address the issue as it relates to this case. In Griffin, the Court discussed the long-recognized _______ general rule: "a general jury verdict [is] valid so long as it [is] legally supportable on one of the submitted grounds -- even though [this gives] no assurance that a valid ground, rather than an invalid one, was actually the basis for the jury's action." Id. at 49. The Court acknowledged that this doctrine has been __ settled law throughout this country's existence. See id. ___ __ Indeed, the rule was declared by Lord Mansfield at King's Bench before the Declaration of Independence: "if there is any one count to support the verdict, it shall stand good, notwithstanding all the rest are bad." Peake v. Oldham, 1 Cowper _____ ______ 275, 276, 98 Eng.Rep. 1083, 1084 (K.B. 1775), quoted in Claasen ______ __ _______ v. United States, 142 U.S. 140, 146 (1891), quoted in Griffin v. _____________ ______ __ _______ United States, 502 U.S. at 49-50. The rule, Griffin notes, was _____________ _______ more recently followed in Turner v. United States, 396 U.S. 398, ______ _____________ 420 (1970). In Turner, the appellant had been charged in a ______ single count with knowingly not only purchasing, but also dispensing and distributing heroin in violation of Federal law, and the jury returned a general verdict of guilty on the charge. Turner v. United States, 396 U.S. at 419-20. The Court concluded ______ _____________ that, because the evidence at trial was sufficient to support the contention that the appellant had distributed heroin in violation of the relevant statute, the verdict should be upheld, whether or -9- not the evidence was sufficient to support the other conjunctive allegations in the count. See id. at 420-21. The Court relied ___ __ on what it labeled the "general rule" on the issue: "when a jury returns a guilty verdict on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged." Id. at __ 420, quoted in Griffin v. United States, 502 U.S. at 56-57. See ______ __ _______ _____________ ___ also Turner v. United States, 396 U.S. at 420 & n.42, and cases ____ ______ _____________ cited. The primary exception to the general rule, Griffin _______ recognizes, finds its roots in Stromberg v. California, 283 U.S. _________ __________ 359 (1931). See Griffin v. United States, 502 U.S. at 52. In ___ _______ _____________ Stromberg, the appellant had been charged in a single count of an _________ information of violating a California statute prohibiting the display of a red flag for any of three purposes: "as a sign, symbol or emblem of opposition to organized government[;] or as an invitation or stimulus to anarchistic action[;] or as an aid to propaganda that is of a seditious character." Stromberg v. _________ California, 283 U.S. 359, 361 (1931) (citation omitted). The __________ Court determined that the first of the statute's three clauses violates the Fourteenth Amendment. See id. at 369-70. In ___ __ setting aside the jury's general verdict, it stated: "[I]f any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." Id. at 368, __ quoted in Griffin v. United States, 502 U.S. at 53. The rule of ______ __ _______ _____________ Stromberg thereafter was applied in many cases involving _________ -10- "general-verdict convictions that may have rested on an unconstitutional ground." See Griffin v. United States, 502 U.S. ___ _______ _____________ at 55, and cases cited. In Yates v. United States, 354 U.S. 298 (1957), the _____ ______________ Court extended the rule of Stromberg, and in doing so, created _________ some confusion. Yates concerns the convictions of numerous _____ appellants on a single-count indictment charging them with violating a California statute by conspiring for two unlawful purposes: (1) advocating the violent overthrow of the government; and (2) organizing the Communist Party of the United States. See Yates v. United States, 354 U.S. at 300. The Court ___ _____ _____________ determined that the "organizing" charge was prohibited by the relevant statute of limitations. See id. at 312. The Court ___ __ held: "In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected." Id. (citing Stromberg v. California, 283 U.S. at 367- __ _________ __________ 68; Williams v. North Carolina, 317 U.S. 287, 292 (1942); Cramer ________ ______________ ______ v. United States, 325 U.S. 1, 36 n.45 (1945)).  _____________ As the Court acknowledged in Griffin, Yates constitutes _______ _____ a novel and unexplained extension of the Stromberg rule: _________ Yates . . . was the first and only case _____ of ours to apply Stromberg to a general _________ verdict in which one of the possible bases of conviction did not violate any -11- provision of the Constitution but was simply legally inadequate (because of a statutory time bar). As we have described, that was an unexplained extension, explicitly invoking neither the Due Process Clause (which is an unlikely basis) nor our supervisory powers over the procedures employed in a federal prosecution. Griffin v. United States, 502 U.S. at 55-56. Griffin notes that _______ _____________ _______ none of the three cases cited in Yates to support its holding -- _____ Stromberg and two of its progeny, Williams v. North Carolina, 317 _________ ________ ______________ U.S. 287, 292 (1942), and Cramer v. United States, 325 U.S. 1, 36 ______ _____________ n.45 (1945) -- in fact supports it. See Griffin v. United ___ _______ ______ States, 502 U.S. at 52, 54-55.  ______ Griffin clarifies Yates by explaining that it extends _______ _____ only to cases in which one of the possible bases of conviction was legally erroneous. See id. at 51-52. Griffin distinguishes ___ __ _______ cases, like Turner, which concern convictions that may have ______ rested on a basis that was not supported by the evidence, from those concerning convictions possibly resting on an invalid ground as a result of an error of law. See id. at 58-59. It ___ __ explains: In one sense "legal error" includes inadequacy of evidence -- namely, when the phrase is used as a term of art to -12- designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense -- a ___ __ _______ _____ more natural and less artful sense -- the ___ term "legal error" means a mistake about ____ ______ ______ _____ _ _______ _____ the law, as opposed to a mistake ___ ___ __ _______ __ _ _______ concerning the weight or the factual __________ ___ ______ __ ___ _______ import of the evidence. . . . [W]e are ______ __ ___ ________ using "legal error" in the latter sense. Id. at 59 (emphasis added). __ Here, Nieves-Burgos asserts, and the government concedes, that there was insufficient evidence presented at trial to support the firearms conviction with respect to two of the three guns listed in the charge, that is, the two guns found in the cars. Turner and Griffin tell us quite clearly that Nieves- ______ _______ Burgos' verdict shall not be set aside on this basis alone. Rather, the verdict must stand so long as it is sufficiently supported by the evidence concerning the third firearm. We therefore must determine whether the evidence sufficiently supports Nieves-Burgos' conviction under 18 U.S.C. 924(c)(1) as to the firearm found in room 311. -13- Before we move on, however, we acknowledge that, before Griffin, Yates appeared to set forth a rule that differed, if not _______ _____ conflicted, with the long-standing general rule recognized in Turner. Prior to Griffin, we cited authority relying on Yates in ______ _______ _____ support of the proposition that a general verdict returned on a charge asserting numerous grounds for conviction must be vacated where one or more of the grounds is insufficiently supported by the evidence and it is unclear whether the jury relied on the insufficient ground. See United States v. Moynagh, 566 F.2d 799, _____________ _______ 804 (1st Cir. 1977), cert. denied, 435 U.S. 917 (1978) (citing ____ ______ United States v. Natelli, 527 F.2d 311, 325 (2d Cir. 1975), cert. _____________ _______ ____ denied, 425 U.S. 934 (1976) (citing Yates v. United States, 354 ______ _____ _____________ U.S. 298)) ("We conclude that Moynagh's conviction on these counts cannot be sustained because each count contains a specification charging concealment . . . and no evidence was introduced which supports any fraudulent concealment . . . ."). Griffin renders this proposition unsound.4 _______ We note that this type of issue may, in proper circumstances, be avoided: "[I]f the evidence is insufficient to support an alternative legal theory of liability, it would generally be preferable for the court to give an instruction removing that theory from the jury's consideration." Griffin v. _______  ____________________ 4 We have on numerous occasions cited Yates in accord with _____ Griffin's interpretation of it. See, e.g., United States v. _______ ___ ____ ______________ Ochs, 842 F.2d 515, 520 (1st Cir. 1988); United States v. ____ ______________ Kavazanjian, 623 F.2d 730, 739-40 (1st Cir. 1980); United States ___________ _____________ v. Driscoll, 449 F.2d 894, 898 (1st Cir. 1971), cert. denied, 405 ________ ____ ______ U.S. 920 (1972). -14- United States, 502 U.S. at 60. Aside from attempting to "unring _____________ the bell," however, when there are alternative bases for conviction, the trial court may be well advised to require a proffer of the evidence linking a particular defendant with a particular alternative. Also, the government should consider avoiding alternative pleading altogether, or the trial court might require each of the alternatives to be considered and proved separately. B. Sufficiency of the Evidence B. Sufficiency of the Evidence ___________________________ Nieves-Burgos argues that the evidence at trial was not sufficient to support his conviction on count four for violation of 18 U.S.C. 924(c)(1) as to the firearm found in room 311. 1. Standard of Review 1. Standard of Review In reviewing challenges to the sufficiency of evidence, "[o]ur task is to review the record to determine whether the evidence and reasonable inferences therefrom, taken as a whole and in the light most favorable to the prosecution, would allow a rational jury to determine beyond a reasonable doubt that the defendants were guilty as charged." United States v. Mena- ______________ _____ Robles, 4 F.3d 1026, 1031 (1st Cir. 1993), cert. denied sub nom. ______ ____ ______ ___ ___ Rivera v. United States, 114 S. Ct. 1550 (1994). We therefore ______ _____________ resolve all credibility issues in favor of the verdict. See ___ United States v. Torres-Maldonado, 14 F.3d at 100 (citation ______________ ________________ omitted). We acknowledge that a jury's determination need not be grounded in direct evidence; rather it may be based wholly on circumstantial evidence. See id. In addition, the evidence ___ __ -15- "'need not exclude every reasonable hypothesis of innocence; that is, the factfinder may decide among reasonable interpretations of the evidence.'" Id. (quoting United States v. Cassiere, 4 F.3d __ _____________ ________ 1006, 1011 (1st Cir. 1993) (citation omitted)). The court must satisfy itself "that the guilty verdict finds support in 'a plausible rendition of the record.'" United States v. Echeverri, _____________ _________ 982 F.2d 675, 677 (1st Cir. 1993) (quoting United States v. _____________ Ortiz, 966 F.2d 707, 711 (1st Cir. 1992), cert. denied, 113 S. _____ _____ ______ Ct. 1005 (1993)). 2. Analysis 2. Analysis Section 924(c)(1), 18 U.S.C., makes unlawful the "use" of a firearm "during and in relation to" any Federal drug- trafficking crime. 18 U.S.C. 924(c)(1).5 A conviction under this section results in a mandatory sentence of imprisonment for a term of at least five years. See id. Nieves-Burgos was ___ __ convicted of using the firearm found in room 311 during and in relation to the crime of possessing with the intent to distribute the controlled substance cocaine. We examine the evidence to determine, first, appellant's possessory interest in the firearm at issue, see ___ United States v. Torres-Maldonado, 14 F.3d at 102 (citing United _____________ ________________ ______ States v. Harrison, 931 F.2d 65, 71 (D.C. Cir.), cert. denied, ______ ________ ____ ______ 502 U.S. 593 (1991)) ("in order to establish that a defendant 'used' a firearm for purposes of section 924(c)(1), 'the government must prove that the defendant actually or  ____________________ 5 See supra note 2. _____ -16- constructively possessed it'"), and, second, whether there exists "some facilitative nexus between the weapon and the criminal activity." United States v. Castro-Lara, 970 F.2d 976, 983 (1st _____________ ___________ Cir. 1992), cert. denied sub nom. Sarraff v. United States, 113 ____ ______ ___ ___ _______ _____________ S. Ct. 2935 (1993). a. Possession a. Possession __________ Nieves-Burgos is alleged to have been in constructive possession of the gun found in room 311. Constructive possession exists when a person "knowingly has the power and intention at a given time to exercise dominion and control over [a firearm], either directly or through others." United States v. Torres- ______________ _______ Maldonado, 14 F.3d at 102.  _________ The evidence indicates, though not overwhelmingly, that Nieves-Burgos was in constructive possession of the firearm found in room 311. The evidence supports the existence of the following facts: Nieves-Burgos rented and occupied room 311; he was a direct participant in the drug distribution scheme; the gun was found in a zippered bag, also containing $2,000 in cash, on a couch in room 311; Nieves-Burgos was less than two feet from the gun. Nieves-Burgos concedes in his brief that he "clearly was in control of Room 311." A jury reasonably could infer from these facts that the cash found in the bag that contained the gun was drug trafficking proceeds, and that Nieves-Burgos, a principal in the drug trafficking scheme who concededly was in control of the room, had knowledge of what was in the bag, and, because of his -17- proximity to the gun, had the power and intention to exercise dominion over it. Clearly, there is evidence in the record that weighs against this conclusion: no witness could link the gun or the bag directly to Nieves-Burgos; the bag concealing the gun was zippered; several co-defendants were found sitting within several feet of the gun, and Gotay-Col n, who was seated on the couch, may have been closer to the gun than was Nieves-Burgos. Nonetheless, our role is not to weigh the evidence; we are merely to ensure that some evidence exists to support sufficiently the jury's determination. See United States v. Mena-Robles, 4 F.3d ___ _____________ ___________ at 1031. Again, the evidence supports the inference that Nieves- Burgos was in constructive possession of the gun: He concedes that he "clearly was in control of Room 311"; he was a principal with respect to the underlying offense of possession with intent to distribute; and, he was found near -- less than two feet from -- the gun. This result is consistent with Torres-Maldonado, in ________________ which we concluded that the evidence at trial was insufficient to establish that appellants Torres-Maldonado and Gotay-Col n were in constructive possession of the gun found in room 311. See ___ United States v. Torres-Maldonado, 14 F.3d at 102-03. We ______________ ________________ considered to be significant the absence of evidence that either appellant was involved in the drug distribution scheme: "Unlike the evidence against the other defendants . . . the evidence against Torres-Maldonado and Gotay-Col n failed to establish any -18- connection between these two defendants, on one hand, and those drug distribution transactions which appeared to involve guns, on the other." Id. at 102. Again, the evidence here shows that __ Nieves-Burgos was a direct participant in the drug distribution scheme. b. Facilitative Nexus b. Facilitative Nexus __________________ Use, as that term applies in 924(c)(1), requires more than mere possession of a firearm, but does not require outwardly apparent utilization: "[the] weapon need not be brandished, displayed or discharged." United States v. Reyes-Mercado, 22 _____________ _____________ F.3d 363, 367 (1st Cir. 1994) (citations omitted). To sustain a conviction under this section for the use of a firearm, there must be shown "some facilitative nexus between the weapon and the criminal activity." Id. (citations omitted).  __ We have stated that, "'the government need not prove actual possession by the defendant, only that the firearm was readily accessible for the defendant's use' and that '[p]lacing a weapon nearby to protect a drug operation comes within the definition of "used"' for purposes of section 924(c)." United ______ States v. Wight, 968 F.2d 1393, 1396 (1st Cir. 1992) (citing ______ _____ United States v. Abreu, 952 F.2d 1458, 1466 (1st Cir.), cert. _____________ _____ ____ denied, 502 U.S. 994 (1992)). "[W]here a drug trafficker is not ______ carrying a gun on his person, but has one nearby, the court's critical concern is not whether the gun was 'instantly available' or 'exclusively dedicated to the narcotics trade,' but whether it was 'available for use' in connection with the narcotics trade." -19- United States v. Castro-Lara, 970 F.2d at 983. Among the factors _____________ ___________ we examine in determining whether a gun was available for use in connection with a drug operation are the proximity of the gun to the drugs and drug proceeds and the availability of the gun to the defendant. See, e.g., United States v. Paulino, 13 F.3d 20, ___ ____ _____________ _______ 26 (1st Cir. 1994) ("Drugs, drug paraphernalia, and a loaded revolver were located in close proximity to one another. [Appellant] had an apparent possessory interest in, and a significant degree of control over, the premises. On these facts, a reasonable factfinder certainly could find the requisite facilitative nexus . . . ."); United States v. Castro-Lara, 970 _____________ ___________ F.2d at 983 ("Appellant was apprehended in his car, at the scene of a drug pickup, with the gun inside the car's trunk. . . . [W]e believe a rational jury was free to conclude that the location of the firearm -- near a large sum of cash, in close proximity to live ammunition, and at a place where drugs were to be delivered -- coupled with the timing -- [appellant] brought the gun to the airstrip in the course of taking delivery of a sizable quantity of cocaine -- supported a finding that the firearm was 'available for use' during and in relation to the drug trafficking crime."). There was testimony at trial that the gun was found in room 311 in a zippered bag less than two feet from Nieves-Burgos, and that also found in the room were several quantities of cocaine, bundles of cash, and various instruments and supplies typically utilized for packaging cocaine. This evidence is sufficient to support a finding that the gun in room 311 was used -20- by Nieves-Burgos to protect the drugs of which he was in possession. Although there is evidence in the record that weighs against this conclusion, the jury presumably considered all of the evidence and drew the permissible inference that the gun was used by Nieves-Burgos during and in relation to his possession with intent to distribute cocaine, in violation of 924(c)(1). See United States v. Batista-Polanco, 927 F.2d 14, 17 (1st Cir. ___ _____________ _______________ 1991) ("the factfinder may decide among reasonable interpretations of the evidence"). CONCLUSION CONCLUSION Nieves-Burgos' conviction is supported sufficiently by the evidence and stands without error. The conviction is affirmed. Affirmed. Affirmed. ________  -21-