# United States Court of Appeals
## For the First Circuit

---

No. 02-1847

UNITED STATES OF AMERICA,

Appellee,

v.

JEAN CARLOS CRUZ,

Defendant, Appellant.

---

No. 02-1970

UNITED STATES OF AMERICA,

Appellee

v.

LUIS LUGO-VELEZ,

Defendant, Appellant.

---

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

---

                              Before
                   Selya, <u>Circuit Judge</u>,
              Stapleton,* <u>Senior Circuit Judge</u>, and
                   Howard, <u>Circuit Judge</u>.

                   ─────────────────

     <u>Rachel Brill</u>, for appellant Luis Lugo-Velez.
     <u>Ignacio Fernández de Lahongrais</u>, for appellant Jean Carlos
Cruz.
     <u>Thomas Klumper</u>, Assistant United States Attorney with whom
<u>H.S. Garcia</u>, United States Attorney and <u>Sonia I. Torres</u>, Assistant
United States Attorney were on brief, for appellee.

                   ─────────────────

                   December 19, 2003

                   ─────────────────

───────────────────

     *Of the Third Circuit, sitting by designation.

**HOWARD**, **Circuit Judge**.  Following a five-day trial, a jury convicted co-defendants Luis Lugo-Velez and Jean Carlos Cruz of, inter alia, possession of narcotics with intent to distribute and possession of firearms -- including machine guns -- in furtherance of a drug-trafficking scheme.  These consolidated appeals require us to decide (1) whether the district court erred in various evidentiary rulings, and (2) whether the evidence was sufficient to support the verdicts.  Having carefully reviewed the record, we affirm the convictions of both defendants.

## I.

We recite the facts in the light most favorable to the verdicts.  See United States v. Echeverri, 982 F.2d 675, 676 (1st Cir. 1993).

On October 15, 2001, Puerto Rico Police Agent Angel Aviles parked an unmarked vehicle in front of dead-end Street 2A in Toa Alta and began surveillance of an area known within the police department to be a drug point.  Agent Aviles immediately focused his attention on three individuals -- later identified as Lugo, Cruz, and Jose Gonzalez Bernard -- standing 40 feet away from him, outside a bar known as "The Pub."  Each man was carrying a firearm on his waistline; in addition, Cruz had a "fanny pack" strapped across his chest and appeared "ready to receive money from some person."

Agent Aviles next observed an unidentified man, who was carrying money, approach Cruz from an unidentified vehicle that had just arrived on the scene. After encountering Cruz, the individual returned to his vehicle and drove away. The substance of this meeting -- namely, whether there had been an actual exchange of drugs or money -- was not witnessed.

At one point during his surveillance, Agent Aviles saw Gonzalez disappear around the side of The Pub; when Gonzalez reappeared, he and another unidentified individual were carrying a pillowcase that had rifle barrels protruding from it.[1] These men then lifted the pillowcase, placed it into a nearby garbage can, and, with the assistance of Lugo and Cruz, covered it with a blanket and some trash. After witnessing these activities, Agent Aviles immediately called for backup.

When the reinforcement agents arrived three to four minutes later, backup Agent Luis Sales-Morales noticed that Cruz was carrying a pistol on his waistline. During an ensuing chase, Agent Sales saw Cruz toss his firearm into an overgrown lot. Although the handgun was never recovered, Cruz was eventually arrested as he tried to scale a fence. At the time of his arrest, Cruz was carrying a nine-millimeter magazine, $526 cash, and a

---

[1]The record is unclear as to whether these events occurred before or after Cruz's encounter with the unidentified, money-carrying individual.

fanny pack (strapped across his chest) containing substances that later tested positive for cocaine base, heroin, and cocaine.

Meanwhile, backup Agent Nancy Mendez was pursuing Gonzalez. When she caught him just outside The Pub, Gonzalez attempted to draw his weapon. In response, Agent Mendez grabbed his arm and was dragged inside The Pub. There, during her struggle with Gonzalez, she observed Lugo for the first time; he was standing behind the bar with a gun in his hand. Agent Aviles testified as to how and when Lugo had entered The Pub: "I saw Mendez who was going to arrest the defendants, and they started running. At that moment, I started running, following her. So she went into [The Pub] after, going after the defendants."

Gonzalez eventually surrendered and was taken outside The Pub and arrested. Once outside, Agent Mendez told another agent to go inside The Pub, arrest Lugo, and seize the firearm that she had seen him conceal between a bottle rack and the bar.

Lugo was arrested without incident. Although no drugs or weapons were found on his person, agents successfully recovered the pistol -- a loaded nine-millimeter Smith & Wesson -- that Lugo had hidden behind the bar.

The principal suspects having been apprehended, Agent Aviles next seized the pillowcase from the garbage can. Inside the pillowcase were two Romanian Arms rifles that, as an expert witness later testified, had been converted into machine guns, as well as

an arsenal rifle, a pistol, and large amounts of ammunition.  The serial numbers on the two machine guns and the pistol had been removed, and all four firearms were loaded.

On November 8, 2001, a federal grand jury returned an indictment charging Lugo, Cruz, and Gonzalez with several offenses: Count One alleged that the defendants, aiding and abetting each other, knowingly possessed cocaine base with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count Two alleged that the defendants, aiding and abetting each other, knowingly possessed heroin with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; Count Three alleged that the defendants, aiding and abetting each other, knowingly possessed cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2;[2] Count Five alleged that the defendants, aiding and abetting each other, possessed a firearm in furtherance of a drug-trafficking scheme, in violation of 18 U.S.C. § 924(c)(1) and 18 U.S.C. § 2; Count Six alleged that the defendants, aiding and abetting each other, knowingly possessed a firearm shipped or transported in interstate commerce and from which the manufacturer's serial number had been obliterated or removed, in violation of 18 U.S.C. § 922(k) and 18 U.S.C. § 2; and Count Seven alleged that the defendants, aiding and

---

[2]Count Four is not relevant to this appeal.

abetting each other, possessed a machine gun, in violation of 18 U.S.C. § 922(o) and 18 U.S.C. § 2.

On February 13, 2002, a joint trial began, at which Cruz and Lugo were co-defendants.[3] On February 20th, the jury convicted both defendants on all counts. Thereafter, Cruz was sentenced to concurrent prison terms of 63 months for Counts One, Two, and Three and 60 months for Counts Six and Seven. Lugo was sentenced to concurrent prison terms of 51 months for Counts One, Two, and Three and 60 months for Counts Six and Seven. Additionally, because the jury found that each defendant had possessed a machine gun in furtherance of a drug-trafficking scheme, both Cruz and Lugo were sentenced to 360 months of imprisonment for Count Five, to be served consecutive to their other sentences.[4]  See 18 U.S.C. § 924(c)(1)(B).

These appeals followed.

---

[3]Gonzalez pled guilty and is not a party to this proceeding.

[4]The 360-month sentences imposed for Count Five were in addition to, and separate from, the sentences imposed for Count Seven. Count Five charged the defendants with possession of firearms -- including machine guns -- in furtherance of a drug-trafficking scheme. In convicting the defendants on Count Five, the jury answered "yes" to all three of the following options: one or more pistols; one or more rifles; one or more machine guns.

Count Seven charged the defendants with mere possession of machine guns, which is made illegal under 18 U.S.C. § 922(o).

**II.**

We are presented with two issues on appeal: (1) whether the district court erred in various evidentiary rulings; and (2) whether the evidence was sufficient to support the verdicts.

Given these separate issues, two standards of review apply. First, we review a district court's decision to admit evidence for abuse of discretion. See Larch v. Mansfield Mun. Elec. Dept., 272 F.3d 63, 72 (1st Cir. 2001); see also Udemba v. Nicoli, 237 F.3d 8, 14 (1st Cir. 2001) ("[A] trial court enjoys considerable discretion in connection with the admission or exclusion of evidence. . . ."). Second, in deciding sufficiency challenges, "we review all the evidence, direct and circumstantial, in the light most favorable to the prosecution, drawing all reasonable inferences consistent with the verdict, and avoiding credibility judgments, to determine whether a rational jury could have found guilt beyond a reasonable doubt."[5] United States v. Baltas, 236 F.3d 27, 35 (1st Cir. 2001) (citations omitted); see also United States v. Ruiz, 105 F.3d 1492, 1495 (1st Cir. 1997) (noting that "we review de novo the defendants' challenge to the

---

[5]Following the government's presentation of its case-in-chief, both Cruz and Lugo moved unsuccessfully for judgments of acquittal pursuant to Fed. R. Crim. P. 29. Each defendant thereafter presented evidence in his own defense, thus waiving review of his initial motion. See United States v. Ruiz, 105 F.3d 1492, 1495 n.1 (1st Cir. 1997) (citing United States v. Amparo, 961 F.2d 288, 291 (1st Cir. 1992)). Therefore, we review the evidence presented by Cruz and Lugo during their cases-in-chief in the light most favorable to the verdicts. See Ruiz, 105 F.3d at 1495 n.1.

-8-

evidentiary sufficiency of their convictions, construing the evidence in the light most favorable to the government").

### A. **Evidentiary Rulings**

Lugo contends that the district court improperly admitted (1) "unduly prejudicial testimony concerning the presence of a drug point on 2A Street near The Pub," and (2) "various untagged weapons with obliterated serial numbers, [specifically] the two machine guns."[6]  We find no abuse of discretion.

**(1) The Drug-Point Testimony**

Despite objection, Agent Aviles was allowed to testify at trial as follows:

> Q: Now, the young man to this side of the table [Cruz], can you please tell us what, if anything, was he doing, aside from the fact that he had a weapon in his waist?
>
> A: [Cruz] was standing there.  He had like a brown bag, and he was ready to receive money from some person.  I have knowledge that that is the drug point of that sector.
>
> Q: Excuse me.  Before you go into anything else --
>
> COURT: Let him finish.
>
> A: Personally myself I've arrested several people at that location for violation of weapons and drug laws.

Lugo argues that this testimony should have been excluded because "[Agent] Aviles' assertions [regarding the 'drug point']

---

[6]Cruz does not contest any evidentiary rulings.

were unsupported by statistics, personal knowledge, or details --
and they were unduly prejudicial." As best we can tell,[7] Lugo is
challenging the drug-point testimony on two separate bases: (a)
lack of foundation, in violation of Fed. R. Evid. 602; and (b)
unfair prejudice, in violation of Fed. R. Evid. 403. Neither is
convincing.[8]

First, contrary to Lugo's assertion, the government did,
in fact, present evidence sufficient to support a finding that
Agent Aviles had the requisite personal knowledge of the area's
history. See Fed. R. Evid. 602 ("A witness may not testify to a
matter unless evidence is introduced sufficient to support a
finding that the witness has personal knowledge of the matter.
Evidence to prove personal knowledge may, but need not, consist of
the witness' own testimony."). Specifically, Agent Aviles
testified that he had been a member of the Drugs and Narcotics
Division of the Puerto Rico Police Department for approximately six
years, that he had been involved with approximately 80 or 90
investigations involving drug points, that he knew of other agents
who had made drug arrests outside The Pub, and that he himself had

--------

[7]Lugo's brief refers neither to the Federal Rules of Evidence
nor to case law.

[8]Lugo also contends that the government should not have been
allowed to refer to the drug-point testimony in its closing
argument. Because we reject the underlying evidentiary challenges
to the drug-point testimony, this contention fails.

previously arrested an individual on drug charges outside The Pub.[9]

In addition, three other agents provided corroborating testimony that the area in front of The Pub was known within the police department to be a drug point.  Given the testimony of these four witnesses, the district court acted well within its discretion in determining that there was an adequate foundation for Agent Aviles' testimony.

We next consider whether the district court abused its discretion in determining that the drug-point testimony was not unduly prejudicial.  See Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of <u>unfair</u> prejudice . . . ." (emphasis added)); <u>see</u> <u>also</u> <u>United States</u> v. <u>Pitrone</u>, 115 F.3d 1, 8 (1st Cir. 1997) ("Virtually all evidence is prejudicial -- if the truth be told, that is almost always why the proponent seeks to introduce it -- but it is only <u>unfair</u> prejudice against which the law protects." (emphasis retained)).  According to Lugo, this testimony "allowed [the jury] to infer impermissibly that[,] because Mr. Lugo was arrested at a 'point,' he must have been involved in the drug trade there."

---

[9]On direct examination, Agent Aviles testified that he had personally arrested "several people" at the drug point.  However, on cross examination, Agent Aviles indicated that he had only made one such arrest.

-11-

"Only rarely -- and in extraordinarily compelling circumstances -- will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." Freeman v. Package Machinery Co., 865 F.2d 1331, 1340 (1st Cir. 1988).  This is not such a circumstance.  Here, the drug-point testimony was probative not only to explain Agent Aviles' presence at the scene but also to corroborate the inference that Cruz and Lugo were involved in a drug-trafficking scheme -- a scheme that would be independently suggested by other evidence.  So understood, the district court could have concluded that the prejudice caused by such testimony was not unfair; it was, instead, merely the negative result of the testimony's probative value.

**(2) The Machine Guns**

Lugo next argues that the two machine guns were not properly authenticated, see Fed. R. Evid. 901(a), and thus should not have been admitted into evidence.  We disagree.[10]

---

[10]The record indicates that Lugo objected to the admission of the second of these two weapons but not the first.  Failure to preserve a claim of error as to the admission of the first machine gun does, of course, affect our standard of review.  See United States v. Roberts, 119 F.3d 1006, 1014 (1st Cir. 1997) ("[E]rrors not objected to at trial will be reviewed by the appellate court only when they are 'plain' and undermine the fundamental fairness of the trial." (citations omitted)).  However, because Lugo's argument fails even under the more appellant-friendly abuse-of-discretion standard discussed above, we need not provide a separate analysis for each weapon.

"Federal Rule of Evidence 901(a) requires the trial court to determine if there is a 'reasonable probability' that the evidence is what it is purported to be." United States v. Neal, 36 F.3d 1190, 1210 (1st Cir. 1994); see also United States v. Twitty, 72 F.3d 228, 232 (1st Cir. 1995) ("All that was required for admission was evidence sufficient to permit a reasonable jury to conclude that the guns were the same . . . .").

Here, two agents were called to authenticate the machine guns. First, Agent Aviles testified to the following chronology: (1) immediately following the arrests, he himself seized the pillowcase from the garbage can; (2) the pillowcase's contents, including two Romanian Arms rifles, were then taken to police headquarters; (3) Agent Aviles next phoned Agent Rios from the Bureau of Alcohol, Tobacco, and Firearms and requested that Rios travel to headquarters to take possession of the weapons; and (4) the weapons remained in his custody until Agent Rios arrived. Second, Agent Rios testified (1) that, upon arriving at police headquarters on October 15, 2001, he prepared a property receipt (describing the contents of the pillowcase), which both he and Aviles signed; (2) that he thereafter took possession of the weapons; (3) that, two days later, on October 17, 2001, he prepared a property-inventory form, on which the seized weapons were listed; and (4) that the weapons remained in his custody from October 15th through October 17th. Both men testified that the weapons sought

to be introduced at trial were, in fact, the weapons that earlier had been in their respective custodies. We conclude that the evidence was sufficient to lead a reasonable jury to the same conclusion; accordingly, the admission of this evidence was not erroneous.

### B. <u>Sufficiency of the Evidence</u>

Lugo, but not Cruz, challenges the sufficiency of the evidence with respect to his drug-trafficking convictions. <u>See</u> 21 U.S.C. § 841(a)(1) (criminalizing possession of narcotics with intent to distribute); <u>see also</u> 18 U.S.C. § 2 ("Whoever commits an offense against the United States or who aids [or] abets . . . its commission is punishable as a principal."). Additionally, both Lugo and Cruz argue that there was insufficient evidence to support their respective convictions for possession of a firearm in furtherance of a drug-trafficking scheme. <u>See</u> 18 U.S.C. § 924(c)(1)(A) (providing minimum sentences for such conduct); <u>see also</u> <u>Id.</u> § 924(c)(1)(B) (mandating an enhanced sentence if the firearm possessed by the individual in violation of 18 U.S.C. § 924(c)(1)(A) was a machine gun). We affirm the convictions.

**(1) Lugo's Convictions under 21 U.S.C. § 841(a)(1)**

Lugo contends that there was insufficient evidence to support the jury's findings that he aided and abetted the possession of cocaine base, heroin, and cocaine. Accordingly, he

asks us to set aside his convictions on Counts One, Two, and Three of the indictment.

One who aids and abets a crime is punishable as a principal.  See 18 U.S.C. § 2; see also Nye & Nissen v. United States, 336 U.S. 613, 618-19 (1949).  Accordingly, we must affirm Lugo's conviction if a reasonable jury could have found beyond a reasonable doubt both that (1) the principal (here, Cruz) knowingly possessed and intended to distribute drugs, and that (2) Lugo "consciously shared that criminal design, associated himself with it, and actively sought to ensure its success."  United States v. Arias, 238 F.3d 1, 4-5 (1st Cir. 2001) (citations and internal quotation marks omitted); see also United States v. Campa, 679 F.2d 1006, 1010 (1st Cir. 1982) ("The elements that the government was required to prove [to show that appellant aided and abetted the possession of narcotics] were that appellant associated himself with the venture, that he participated in it as something he wished to bring about, [and] that he sought by his action to make it succeed." (citations and quotation marks omitted)).  We conclude that the evidence was sufficient to prove all elements.

First, there was ample evidence to support a finding that Cruz had possessed controlled substances with the intent to distribute.  Agent Aviles testified that, while conducting surveillance of a known drug area, he had observed an unidentified, money-carrying individual approach a man (later identified as Cruz)

who had a fanny pack strapped across his chest and who appeared "ready to receive money." These observations were corroborated -- indeed, confirmed -- when Agent Sales arrested Cruz and found drugs, together with a substantial amount of cash, in a fanny pack on Cruz's person.

Lugo argues that, "even if the evidence [was] sufficient to determine that Cruz possessed controlled substances with the intent to distribute, the evidence was entirely insufficient to enable the conclusion that . . . Lugo aided and abetted in that venture." Specifically, he notes that "[t]he prosecution simply failed to overcome the presumption of innocence and produce evidence that [he] was more than merely present in connection with any controlled-substance offense." We are not persuaded.

While "mere presence at the scene of the crime" or "mere association with conspirators" is not enough to establish guilt, see United States v. Gomez-Pabon, 911 F.2d 847, 853 (1st Cir. 1990), "the mere presence defense is not so ubiquitous as to envelop every drug-trafficking case in which the government lacks direct evidence of a defendant's complicity." Echeverri, 982 F.2d at 678. See also United States v. Flores-Rivera, 56 F.3d 319, 324 (1st Cir. 1995) ("Mere presence at the scene and close association with those involved are insufficient factors alone; nevertheless, they are relevant factors for the jury." (quoting United States v. Sanchez, 961 F.2d 1169, 1174 (5th Cir. 1992)) (emphasis in

-16-

original)). "As we repeatedly have recognized, a jury is free to rely on its common sense and may infer that criminal conspirators do not involve innocent persons at critical stages of a drug deal." United States v. DiMarzo, 80 F.3d 656, 661 (1st Cir. 1996) (citations omitted). "[S]uch is not normally the conduct that one would expect of conspirators engaged in conduct which by its nature is kept secret from outsiders." United States v. Smith, 680 F.2d 255, 260 (1st Cir. 1982).

Here, of course, Lugo was more than merely present; the evidence suggests that he was present for the important purpose of protecting the money and the drugs. See Echeverri, 982 F.2d at 678 ("[A] defendant's 'mere presence' argument will fail in situations where the 'mere' is lacking."). See also United States v. Lema, 909 F.2d 561, 570 (1st Cir. 1990) ("[P]resence on a single occasion may support a conviction for aiding and abetting if the surrounding circumstances lead to a reasonable inference that the defendant must have been a knowing participant." (citations omitted and emphasis added)). For example, two separate officers testified that Lugo was carrying a pistol, which, upon seizure, was found to be fully loaded with a round of ammunition in its chamber. In addition, Lugo was observed assisting Cruz and Gonzalez in the concealment of the weapons contained within the pillowcase. Moreover, all of these events were occurring in a known drug area -- an area that Lugo promptly fled once police arrived -- and

-17-

there is nothing in the record to suggest that any of these weapons were present for any other reason except to protect Cruz in the event that the upcoming drug deals turned sour. Such evidence (and the lack of an alternative explanation), coupled with the fact that Cruz was arrested while carrying various drugs and a substantial amount of cash, could lead a reasonable jury to conclude beyond a reasonable doubt that Lugo associated himself with Cruz's illegal venture, that he knowingly participated in it, and that, through his actions, he actively sought to protect Cruz and thereby help to ensure the success of the operation.

Nor are we persuaded by the argument that, because Agent Aviles failed to testify that Lugo had been present during the alleged drug exchange, the jury had no evidence on which to base its inference that Lugo knew about Cruz's illegal behavior. While such testimony would have been helpful in proving that Lugo had aided and abetted Cruz, it was not, as discussed above, the only mechanism through which the government could prove that Lugo had the requisite knowledge.

**(2) Defendants' Convictions under 18 U.S.C. § 924(c)(1)**

Finally, we consider whether the evidence was sufficient to support the jury's findings that, on October 15, 2001, the defendants possessed firearms, including machine guns, in furtherance of a drug-trafficking scheme.

The applicable criminal statute provides that

> (A) . . . any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such . . . drug trafficking crime [be sentenced according to this subsection].

> (B) If the firearm possessed by a person convicted of a violation of this subsection . . . is a machine gun . . ., the person shall be sentenced to a term of imprisonment of not less than 30 years.

18 U.S.C. § 924(c)(1); see also 18 U.S.C. § 2.

Due to the thirty-year prison term mandated by 18 U.S.C. § 924(c)(1)(B), both appeals focus primarily on the government's machine-gun evidence. However, given additional evidence that Lugo was carrying a pistol on his waistline, the machine guns are only one variable in Lugo's 18 U.S.C. § 924(c)(1)(A) equation.[11] Applying the statutory language to his particular appeal, then, we must affirm the conviction if the evidence was sufficient to support a finding that Lugo knowingly possessed (or aided and abetted the possession of) either a sidearm weapon in furtherance of the drug-trafficking scheme or a machine gun in furtherance of the drug-trafficking scheme. The propriety of the thirty-year

---

[11]Cruz was not charged with possession of the pistol that allegedly was worn on his waistline and later discarded. Accordingly, his sufficiency challenge concerns only those weapons found in the pillowcase.

prison sentences depend, of course, exclusively on the sufficiency of the machine-gun evidence.

Regarding the sidearm evidence, Lugo was seen carrying a pistol by two separate officers.  First, Agent Aviles testified that, when he arrived on the scene, he noticed that Lugo "had a black pistol [on his waistline]."  Second, Agent Mendez testified that, during her struggle inside The Pub with Gonzalez, she observed Lugo "placing a black pistol in between the bottle rack and the bar."  This black pistol was subsequently seized by police and ultimately admitted into evidence through the authentication testimony of Agent Mendez.  Based on this evidence, then, we have no difficulty concluding that Lugo possessed a pistol.

Of course, given the text of the statute, merely determining that Lugo was in possession of a sidearm is not enough to support the conviction; we must also consider whether the weapon was possessed "in furtherance of . . . a drug-trafficking crime." 18 U.S.C. § 924(c)(1)(A) (emphasis added).  The jury reasonably concluded that it was.

We have recently explained the "in-furtherance-of" requirement:

> When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime.

-20-

United States v. Garner, 338 F.3d 78, 81 (1st Cir. 2003); see also United States v. Luciano, 329 F.3d 1, 6 (1st Cir. 2003) ("Given the close proximity of the firearms and the loaded magazines to the significant stockpile of heroin, we have no difficulty concluding that there was a sufficient nexus between the drug trafficking crime and the firearms to sustain a conviction under [18 U.S.C.] § 924."); cf. United States v. Ceballos-Torres, 218 F.3d 409, 415 (5th Cir. 2000) ("Together, [factors such as the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession, whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found] reasonably support a finding that [the firearms] protected his drugs and money against robbery. Possession of the [firearms] was, therefore, in furtherance of drug trafficking.").

Here, while Lugo's weapon was not found "together" with the drugs in a literal sense, the jury had reason to conclude that Lugo's sidearm was possessed in furtherance of the drug-trafficking scheme: the weapon was loaded, easily accessible, in close proximity to the drugs, and its bearer was standing near a drug-carrying individual in a known drug area. There is nothing in the record to suggest that the firearm served any other purpose, and we are not persuaded by Lugo's "mere presence" defense. See discussion in II. B.(1), above.

Because we conclude that there was sufficient evidence to support a finding that Lugo possessed a sidearm in furtherance of a drug-trafficking scheme, see 18 U.S.C. § 924(c)(1)(A), we will not set aside his conviction on Count Five. Accordingly, regarding Lugo, the machine-gun issue is relevant to Count Five only insofar as proper sentencing is concerned. See 18 U.S.C. § 924(c)(1)(B).

Both Lugo and Cruz contend that the evidence was insufficient to prove beyond a reasonable doubt that they had (either actively or constructively) possessed a machine gun in furtherance of the drug-trafficking scheme. We disagree.

Although there was no evidence that Cruz or Lugo had "any direct or actual possessory interest" in the machine guns that were contained within -- and protruding from -- the pillowcase, see United States v. Torres-Maldonado, 14 F.3d 95, 102 (1st Cir. 1994), the jury, having been properly instructed, could have concluded that the defendants had constructive possession of the machine guns.

"Constructive possession exists when a person 'knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others.'" Id. (quoting United States v. Garcia, 983 F.2d 1160, 1164 (1st Cir. 1993)); see also United States v. Akinola, 985 F.2d 1105, 1109 (1st Cir. 1993) ("Constructive possession may be proved by demonstrating defendant's power and intent to exercise ownership, dominion, or

control over the contraband itself, or over the area in which the contraband was concealed. Constructive possession may be sole or joint and may be achieved directly or through others." (citations omitted)).

In this case, the jury had before it Agent Aviles' testimony that, after Gonzalez had disappeared behind a building and reappeared carrying a pillowcase from which rifle barrels were protruding, Cruz and Lugo assisted Gonzalez in "cover[ing] the long weapons" with a blanket. In addition, there was evidence that all of this activity had occurred within a known drug area, that all parties had been armed with pistols, that an unknown party had arrived on the scene with money in his hand, and that Cruz had been arrested with drugs and a substantial amount of cash on his person.

Assuming, as we must, the veracity of this evidence, the jury was free to infer that the loaded "long weapons" had been concealed within the garbage can as an added security measure. There is nothing in the record to suggest that these firearms were themselves for sale or that they served any purposes other than increased protection and peace of mind. Accordingly, the jury could have concluded that Cruz and Lugo had the power and intention to retrieve the firearms if and when the upcoming drug transactions turned sour; that is, the defendants constructively possessed the machine guns in furtherance of the drug-trafficking scheme.

We acknowledge that the jury's inferences of guilt are not inevitable and that the sufficiency questions are arguably close. However,

> an appellate court plays a very circumscribed role in gauging the sufficiency of the evidentiary foundation upon which a criminal conviction rests. The court of appeals neither weighs the credibility of the witnesses nor attempts to assess whether the prosecution succeeded in eliminating every possible theory consistent with the defendant's innocence.

United States v. Noah, 130 F.3d 490, 494 (1st Cir. 1997) (citation omitted). Instead, "[w]e defer, within reason, to inferences formulated by the jury in the light of its collective understanding of human behavior in the circumstances revealed by the evidence." United States v. Passos-Paternina, 918 F.2d 979, 985 (1st Cir. 1990) (citations omitted). So too here.

### III.

For the reasons stated above, we **affirm** the convictions of both defendants.