# United States Court of Appeals
## For the First Circuit

No. 04-2722

UNITED STATES OF AMERICA,

Appellee,

v.

TONY BARROW,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Héctor M. Laffitte, U.S. District Judge]

Before

Torruella, Circuit Judge,
Hansen,[*] Senior Circuit Judge,
and Lynch, Circuit Judge.

J. Michael McGuinness, with whom The McGuinness Law Firm was on brief, for appellant.
Germán A. Rieckehoff, Assistant United States Attorney, with whom Nelson Pérez-Sosa, Assistant United States Attorney, and H.S. García, United States Attorney, were on brief, for appellee.

May 17, 2006

---

[*]  Of the Eighth Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.   Defendant Tony Barrow ("Barrow") was convicted of importing 500 or more grams of cocaine into the United States, in violation of 21 U.S.C. §§ 952 and 960, and of possessing with intent to distribute 500 or more grams of cocaine, in violation of 21 U.S.C. § 841.   He appeals his conviction and sentence.   After careful consideration, we affirm.

## I.

On November 16, 2003, Barrow flew from the island of St. Maarten (or St. Martin) to San Juan, Puerto Rico.   As he was going through immigration, agents questioned him pursuant to their routine procedures.   When asked about the purpose of his visit, he stated that he went to St. Maarten for business and that he was setting up a barber shop.   According to the agents, Barrow avoided eye contact and appeared nervous.   Barrow was carrying a box used by duty-free stores, which is not unusual for a person traveling internationally, but the box was old and broken instead of new. The agents referred Barrow to secondary inspection.

The agents ran a computer query on Barrow's plane ticket and discovered that the ticket had been purchased the day before by someone else and was paid for in cash.   The agents also discovered that Barrow had a criminal history.   Agents asked him further questions, to which they found Barrow's answers suspicious.   Barrow stated that he had a cousin in St. Maarten, but that he did not stay with him or have his address or phone number.   Agents found a

phone number in Barrow's bag, and Barrow stated that it was the cell phone number of his cousin but that it did not work.

One of the agents opened the box Barrow was carrying and discovered that it contained four liquor bottles. Barrow and the government dispute whether Barrow was present during the inspection of the bottles. The agent found the bottles unusual because liquor bottles normally have some air at the top and these were filled all the way to the top, the caps of the bottles did not look new, and there were no bubbles when the bottles were shaken. The agent tested the bottles and discovered that they contained cocaine. The agents then arrested Barrow.

Further analysis revealed that the bottles contained 2.6 kilograms of cocaine. Accordingly, Barrow was charged with importing 500 grams or more of cocaine into the United States ("Count 1") and with possession with intent to distribute 500 grams or more of cocaine ("Count 2"). Barrow moved to suppress the contents of the liquor bottles, arguing that the search was unreasonable. In support of his motion to dismiss, Barrow requested an evidentiary hearing, which he argued was necessary to determine the veracity of the agents' statements and to determine whether the agents had stopped him because of his race. The district court did not allow an evidentiary hearing and denied the motion to suppress.

After a three day trial, a jury convicted Barrow of both counts. Because Barrow had prior convictions for drug trafficking crimes, the district court found that he was a career offender and sentenced him to a term of imprisonment of 262 months, which was the minimum sentence under the Guidelines.

## II.

### A. Motion to Suppress

Barrow argues that the search of the liquor bottles outside of his presence[1] was an unreasonable search that violated his Fourth Amendment rights. Because of the unique considerations concerning the entry of persons into the United States, routine searches at an international border are reasonable under the Fourth Amendment and do not require a warrant, probable cause, or even a reasonable suspicion. United States v. Montoya De Hernández, 473 U.S. 531, 538 (1985). Non-routine border searches include strip searches and body-cavity searches and can only be made if supported by a reasonable suspicion. United States v. Braks, 842 F.2d 509, 512-14 (1st Cir. 1988). Barrow does not contend that the testing of the contents of the liquor bottles was non-routine. He merely argues that the search was unreasonable but cites no case law in support of this proposition. The testing of the contents of the liquor bottles was clearly a routine border search, and we refuse

---

[1] The parties dispute whether Barrow was present during the testing, but we need not address this issue as it does not change the outcome.

to find it unreasonable merely because Barrow may not have been present.

Barrow also argues that the district court erred in not granting him an evidentiary hearing to resolve factual disputes relevant to his motion to suppress. He cites three factual disputes: (1) whether he was present during the testing of the contents of the liquor bottles; (2) whether statements by government agents explaining their reasons for stopping Barrow were true; and (3) whether government agents stopped Barrow because of his race. We review the district court's decision not to hold an evidentiary hearing for abuse of discretion. United States v. Calderón, 77 F.3d 6, 9 (1st Cir. 1996). The first two factual disputes do not merit attention because they are not relevant to determining whether evidence should be suppressed. As we just discussed, the search of the liquor bottles was reasonable regardless of Barrow's presence. Further, the agents did not need a reason to stop Barrow, so the truth of their statements is immaterial. Finally, the district court did not abuse its discretion in denying an evidentiary hearing to investigate bare speculation that agents may have considered Barrow's race in their decision to stop him. See Shackelford v. DeLoitte & Touche, LLP, 190 F.3d 398, 405 (5th Cir. 1999) (finding bare allegations of discrimination insufficient to avoid summary judgment).

**B. Information Stating Prior Convictions**

In order to use prior convictions as a basis for enhancing Barrow's sentence, the prosecution was required to "file[] an information with the court (and serve[] a copy of such information on the person or counsel for the person) stating in writing the previous convictions to be relied upon" before the commencement of the trial. 21 U.S.C. § 851(a)(1). The prosecution filed an information with two of Barrow's convictions the day before the trial and served it the following morning before the trial began. Barrow claims that the last-minute filing and service of the information violated the Due Process Clause. Barrow provides no legal support for this claim and has not indicated how he was prejudiced. We have previously upheld the filing and service of an information the day before trial, and we similarly find no error here. United States v. Cartagena-Carrasquillo, 70 F.3d 706, 715 (1st Cir. 1995).

**C. Admissibility of Evidence**

Barrow contends that the district court made several errors in admitting evidence at trial. We review a district court's decision to admit evidence for abuse of discretion. United States v. Cruz, 352 F.3d 499, 504 (1st Cir. 2003).

**(1) Chain of Custody of the Liquor Bottles**

Barrow argues that the liquor bottles should not have been allowed into evidence because the chain of custody was

compromised.  Under Federal Rule of Evidence 901(a), authentication is a condition precedent to admissibility.  The district court must determine "if there is a reasonable probability that the evidence is what it is purported to be."  Cruz, 352 F.3d at 506 (internal quotation marks omitted).  Once this is established, "[a] possible defect in the chain of custody for a certain piece of evidence factors into the weight given to the evidence rather than its admissibility."  United States v. Scharon, 187 F.3d 17, 22 (1st Cir. 1999).

The government presented two witnesses to establish the chain of custody: Customs Agent Roderic Gurunmendi and DEA Chemist Enrique Piñero.  Gurunmendi participated in the arrest of Barrow.  He testified that, on the day of Barrow's arrest, he put the liquor bottles in an evidence bag, sealed the bag, and wrote his initials and badge number on the bag.  His supervisor witnessed this, also signed the bag, and stored the bag in a vault.  Gurunmendi also testified that the bottles in evidence at trial were the same ones that were seized from Barrow.

Piñero tested the contents of the liquor bottles.  He testified that when he received the bottles they were in heat-sealed bags inside Customs boxes.  After performing the tests, he put the bottles in a DEA heat-sealed bag, initialed the bag, and then placed and sealed it in a DEA box.  At trial, he testified that the bottles in evidence were the same ones that he had tested.

The only coherent argument that Barrow makes is that one of the liquor bottles broke between Barrow's arrest and the trial and that this suggests that the evidence was tampered with. Piñero's testimony showed that the bottles were broken after he had tested their contents, so his analysis was not affected. Further, Barrow does not explain why a broken bottle undermines the chain of custody or indicates tampering. Accordingly, we find that the district court did not abuse its discretion in admitting the liquor bottles.

### (2) Testimony by Agent Rivera and Agent Gurunmendi

Agent Jorge Rivera of U.S. Immigration and Customs Enforcement testified at trial, based on his training and experience, how drugs are usually transported or shipped across the border. Agent Gurunmendi testified that St. Maarten is a high-risk country and that agents seize a lot of drugs from people arriving from St. Maarten. Barrow objected to both agents' testimony and now argues that their testimony was improper both as lay and expert testimony and also that it should have been excluded under Federal Rule of Evidence 403.

Barrow's argument, which is difficult to understand, does not turn on whether the two agents were lay or expert witnesses, but is only that the testimony lacked foundation and as such was inadmissible and in any event was unduly prejudicial under Rule 403. While the testimony was harmful in the sense that it was

relevant and probative, this does not make the testimony unduly prejudicial. See Cruz, 352 F.3d at 506 ("[T]he district court could have concluded that the prejudice caused by such testimony was not unfair; it was, instead, merely the negative result of the testimony's probative value."); United States v. Pitrone, 115 F.3d 1, 8 (1st Cir. 1997) ("Virtually all evidence is prejudicial -- if the truth be told, that is almost always why the proponent seeks to introduce it -- but it is only unfair prejudice against which the law protects."). The subject of the agents' testimony was not an unusual one in criminal cases. See, e.g., Cruz, 352 F.3d at 504-05 (officer testified that defendant was seen at a known drug point); United States v. García-Morales, 382 F.3d 12, 18-19 (1st Cir. 2004) (officer explained "the structure and operation of a typical drug distribution conspiracy"). Further, the agents' testimony was not specific to Barrow in that it described general techniques used in international drug trafficking and the general prevalence of drug trafficking out of St. Maarten. This testimony is rather insignificant when compared with the other evidence against Barrow. Assuming arguendo that the court abused its discretion in allowing the agents' testimony, any error was harmless.

### D. Sentencing Errors

Barrow claims that he is entitled to resentencing under United States v. Booker, 543 U.S. 220 (2005). Because he did not argue below that the Guidelines were unconstitutional or that the

sentence violated Apprendi v. New Jersey, 530 U.S. 466 (2000), or Blakely v. Washington, 542 U.S. 296 (2004), we review for plain error. See United States v. Antonakopoulos, 399 F.3d 68, 76 (1st Cir. 2005).[2] In order to meet this standard, Barrow "must point to circumstances creating a reasonable probability that the district court would impose a different sentence more favorable to the defendant under the new 'advisory Guidelines' Booker regime." Id. at 75. Barrow, however, has failed to point to anything in the record to indicate that such a reasonable probability exists.[3]

Because of his prior convictions, the sentencing judge found that Barrow was a career offender and enhanced his sentence. Barrow contends that a jury was required to find the existence of the prior convictions beyond a reasonable doubt despite Supreme Court authority to the contrary. See Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998). Barrow argues that Almendarez-Torres has been undermined by the Court's more recent decision in Booker. We have recently considered and rejected this very argument. See United States v. Jiménez-Beltre, 440 F.3d 514, 520 (1st Cir. 2006) (en banc).

---

[2] Barrow argues that there should be a presumption of prejudice, but this argument is foreclosed by our decision in Antonakopoulos. 399 F.3d at 79-80 & n.11.

[3] Barrow did not even mention that he received a sentence at the bottom of the applicable Guideline range. Although this is certainly a factor, it is itself not sufficient. See United States v. Guzmán, 419 F.3d 27, 33 (1st Cir. 2005).

### E. Cumulative Error

Barrow's last ditch effort is to argue that the alleged errors taken cumulatively deprived him of due process. We have noted that "[i]ndividual errors, insufficient in themselves to necessitate a new trial, may in the aggregate have a more debilitating effect." United States v. Sepúlveda, 15 F.3d 1161, 1195-96 (1st Cir. 1994). Given that we have not found any significant prejudice from any of Barrow's alleged errors, we do not find any cumulative effect that would justify a new trial.

### F. Waived Arguments

In his brief, Barrow alleges other errors by the district court without any discussion of the relevant law or facts. We need not consider these alleged errors because "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990). Regardless, these alleged errors are patently meritless, and we briefly address each in turn.

Barrow states that no reasonable jury could have found that he knowingly possessed the cocaine in the liquor bottles. A jury may reasonably infer knowledge from circumstantial evidence, and we have affirmed the jury's verdict in similar situations. See United States v. Hernández, 218 F.3d 58, 66-67 (1st Cir. 2000). Barrow also contends that the district court erred in not granting a mistrial after a prosecution witness stated that he "found some

-11-

criminal history in the computer" after the district court had instructed the prosecution not to introduce testimony about Barrow's prior convictions.  We do not think the district court abused its discretion in not granting a mistrial based on this statement, and since Barrow testified and was impeached with a prior conviction, he cannot claim prejudice.  See United States v. Freeman, 208 F.3d 332, 339 (1st Cir. 2000).  Further, Barrow summarily asserts that the district court violated Federal Rules of Evidence 403 and 609 in allowing the government to impeach his credibility with a prior conviction.  The district court was well within its discretion since it allowed impeachment with only one of Barrow's two prior convictions; the prior conviction was for drug trafficking, which we regard as bearing on credibility; Barrow's credibility was central to the case; and the court instructed the jury that the prior conviction could not be used as evidence of guilt but only to determine Barrow's credibility.  See United States v. Brito, 427 F.3d 53, 63-64 (1st Cir. 2005).

## III.

For the foregoing reasons, we affirm Barrow's conviction and sentence.

**Affirmed**.